1  Clifford Levenson
   5119 N. 19th Avenue, Ste. K
2  Phoenix, Arizona 85015
   (602)258-8989 facsimile (602) 544-1900
3  cliff@legalhelpontheway.com
   State Bar No. 014523
4  Attorney for Plaintiffs

5

                    IN THE UNITED STATES DISTRICT COURT
6
                        FOR THE DISTRICT OF ARIZONA
7

8
   CENTER FOR BIOLOGICAL              **Case No.:**
9  DIVERSITY; MARICOPA AUDUBON
   SOCIETY; and TUCSON AUDUBON
10 SOCIETY;
                                      **COMPLAINT**
11         Plaintiffs,

12 vs.

13
   PINAL COUNTY; PINAL COUNTY
14 BOARD OF SUPERVISORS; LIONEL D.
   RUIZ; SANDIE SMITH; and DAVID
15 SNIDER;

16         Defendants.

17

18

19    Plaintiffs by and through their attorney undersigned, for their Complaint against the

20 defendants, allege as follows:

21                              INTRODUCTION

22 1.     This is an action brought pursuant to the Supremacy Clause of the U.S.

23 Constitution (U.S. Const. art. VI, cl. 2.), and the Clean Water Act (33 U.S.C. 1251 et

24 seq.).  The Bureau of Land Management of the U.S. Department of the Interior ("BLM")

25 owns and administers a conservation easement on land including a portion of the San

26 Pedro River owned by Eric and Jean Schwennesen (the "Schwennesen Property") in

27 Pinal County, Arizona.  Pinal County and the Pinal County Board of Supervisors (the

28 "County")  have used the eminent domain process, in Pinal County Superior Court, to

   purportedly seize a portion of the Schwennesen Property, in order to create and operate a

public thoroughfare on land which BLM, in exercise of its ownership interest, intends to be used only as a limited-access, administrative-use and emergency-use ranch vehicleway. The County's actions violate BLM's property rights. The County's actions violate the Supremacy Clause of the U.S. Constitution.

2.     Since January 31, 2008, the County has used bulldozers to create and maintain this unrestricted public road within the BLM's conservation easement. These actions are causing accelerating erosion of streamside soils and damage to vegetation within Critical Habitat, threatening consistently occupied endangered Southwestern Willow Flycatcher nest trees.  In the course of creating this public thoroughfare, the County has, and continues to dredge and to place imported fill in the waters of the United States without a permit, in violation of section 404 of the Clean Water Act. BLM has never released its restriction on use of any portion of the Property to the County. BLM has filed a formal written complaint with the U.S. Army Corps of Engineers, the agency that administers section 404 dredge and fill activities, that the County's activities on the Property are impairing BLM's conservation easement, and are unauthorized under the Clean Water Act.  Plaintiff Center for Biological Diversity has also complained to the Army Corps of Engineers regarding the County's violation of the Clean Water Act on the Schwennesen Property and within the conservation easement. The County's actions thus violate the Supremacy Clause of the United States Constitution, and the Clean Water Act.  The County's actions should be declared unconstitutional, unlawful, and be enjoined by this Court.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1331 (federal question jurisdiction). An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201 (declaratory judgments).

4.      Venue in this Court is proper for Relief under 28 U.S.C. § 1391(b) because the challenged actions are located in Arizona. Plaintiff Center for Biological Diversity's main office is located in Tucson, Arizona. Assignment to the Phoenix Division is proper because the challenged activities are located in Pinal County.

## PARTIES

5.      Plaintiff Center for Biological Diversity is a non-profit corporation with over 40,000 members dedicated to the preservation, protection, and restoration of biodiversity and ecosystems throughout the world. The Center's main office is located in Tucson, Arizona. The Center works to insure the long-term health and viability of animal and plant species across the United States and elsewhere, and to protect the habitat these species need to survive.

6.      Members of the Center for Biological Diversity have worked to protect the San Pedro River and its wildlife since approximately 1987. The Center petitioned for endangered species protection for the Southwestern Willow Flycatcher under the Endangered Species Act on January 25, 1992. The Center has also worked to protect other species dependent upon the San Pedro, including petitioning for protection of the Sonora tiger salamander and Huachuca water umbel. Member and co-founder Dr. Robin Silver has visited the area subject to BLM's conservation easement since approximately 1985. He will continue to return and is harmed by the ongoing actions of the Defendants.

7.      Plaintiff Maricopa Audubon Society ("Maricopa Audubon") is an organization of volunteers dedicated to the enjoyment of birds and other wildlife with a primary focus on the protection and restoration of the habitat of the Southwest through education and community involvement. Maricopa Audubon is a nonprofit Arizona organization with approximately 2,000 members. Maricopa Audubon has a long history of involvement with the San Pedro River.  Maricopa Audubon's volunteers and members use, enjoy, and benefit from the San Pedro River for wildlife observation, research, education, and recreational activities. They intend to continue to engage in these activities in the future.

1   Defendants' resolution and actions in building a road has adversely affected the

2   foregoing interests of the Maricopa Audubon Society, its volunteers, and members.

3   Unless this Court grants the requested relief, these interests will continue to be adversely

4   affected and irreparably harmed by Defendants' failure to adhere to the Supremacy

5   Clause, and failure to comply with the Clean Water Act.

6   8.      Plaintiff Tucson Audubon Society ("Tucson Audubon"), is a not for profit

7   501(c)(3) organization located in Tucson, Arizona.  Tucson Audubon represents 4000

8   member households throughout southeastern Arizona.  Tucson Audubon has partnerships

9   with private and governmental entities and works with them to conserve and protect

10  habitats where wildlife is at risk to the many factors that threaten their existence. Tucson

11  Audubon is focused on research, education, recreation, and conservation through habitat

12  protection and restoration, especially of riparian systems.  Tucson Audubon members and

13  staff frequently visit and survey the site of the federal conservation easement.  Tucson

14  Audubon has been instrumental in gathering scientific data to identify and protect

15  significant bird habitats as a part of an international effort known as the Important Bird

16  Area Program (IBA). IBA designation is particularly relevant to protecting critical

17  habitat utilized by birds during some part of their life cycle (breeding, feeding, nesting,

18  migrating) as well as supporting a diversity of wildlife species.  The federal conservation

19  easement lies within a designated IBA in which Tucson Audubon has and continues to

20  gather scientific data and conduct ongoing research.  In addition, Tucson Audubon, as

21  part of its educational commitment, conducts a twice yearly program for families to study

22  the flora and fauna of river ecology at a site adjacent to Schwennesen Property.  Known

23  as the Riparian Family Institute, it hosts 24 adults and children for the overnight

24  programs.  Tucson Audubon intends to continue its scientific research in this IBA for

25  many years to come.  The Riparian Family Institute has been held since 1985 by Tucson

26  Audubon and it plans to continue this program in the future.  These substantial interests

27  (the IBA and the RFI) of Tucson Audubon will be adversely affected if the Defendants

28

- 4 -

1    are permitted to open and maintain a public roadway within the BLM's contractual

2    Conservation Easement.

3    9.      Defendant PINAL COUNTY, ARIZONA is a political subdivision of the State of

4    Arizona.  Defendant PINAL COUNTY BOARD OF SUPERVISORS is empowered to

5    authorize and pursue eminent domain proceedings, and construct and maintain County

6    roads in Pinal County.

7    10.     Defendant LIONEL D. RUIZ is a member of the Board of Supervisors of Pinal

8    County. He is sued in his official capacity.

9    11.      Defendant SANDIE SMITH is a member of the Board of Supervisors of Pinal

10   County. She is sued in her official capacity.

11   12.     Defendant DAVID SNIDER is a member of the Board of Supervisors of Pinal

12   County. He is sued in his official capacity.

13                        **GENERAL FACTUAL ALLEGATIONS**

14   13.     The San Pedro River, part of the waters of the United States and subject to the

15   Clean Water Act, originates in Mexico and flows north across the Arizona border until it

16   joins the Gila River southeast of Phoenix. It is home to one of the Southwest's most

17   precious and rare wetland ecosystems. More than 490 species of birds, mammals, fish,

18   amphibians, and reptiles reside in or near the San Pedro River, making it one of the most

19   ecologically and biologically rich places on earth.   The Schwennesen Property is located

20   on the San Pedro River in a perennial, or year-round flowing, section of the river.

21   14.     In evaluating the Schwennesen Property as a procurement broker for the Bureau

22   of Land Management, the Nature Conservancy's report reads as follows:

23

24               "Most experts believe that much of the original riparian
              habitat in Arizona has been destroyed or seriously degraded during
25            the past century.  Because of this loss and the importance of these
              habitats for wildlife, public and private sectors are focusing on the
26            need to preserve the remaining riparian areas in the state. The
              Arizona Chapter of the Nature Conservancy and the U.S. Bureau of
27            Land Management have identified the San Pedro River as the best
28

                                      - 5 -

remaining example of a Southwestern river retaining a relatively
natural functioning ecosystem.  The Conservancy has also named it
one of the original 12 Last Great Places and designated it a premiere
bioreserve project.  The BLM and the Conservancy are currently
working with willing landowners to purchase properties or
Conservation Easements that provide long-term protection for
riparian and wildlife habitat in several core areas along the San Pedro
River.  The Schwennesen parcel is a key tract to accomplishing
protection of the Dudleyville-Cook's Lake core area riparian
corridor...

        Species such as the federally listed Southwestern
Willow Flycatcher are known to nest in the cottonwood-willow forest
on the property...there is presently a good presentation of several
tree age classes on the property indicating a vigorous, sustainable
riparian forest.  Because seedling cottonwoods and willows are very
vulnerable to livestock grazing and ORV damage, important factors
in maintaining riparian forest condition are resting the river bottom
from grazing for one to two years following good tree establishment
seasons and protection of seedling bars from ORV damage." [See
"Baseline Documentation Report," Exhibit C, Dudleyville-Cook's
Lake (Schwennesen Tract), David B. Harris, The Nature
Conservancy, February 27, 1996.]

15.    A portion of the Schwennesen Property was subjected, due to an agreement made

by a previous owner, George B. Gordon, to a "Temporary Highway Easement

Agreement" with Pinal County for a "temporary easement [for a river crossing]...until

the construction of a new bridge across the San Pedro River."  (from Temporary

Highway Easement Agreement, between George B. Gordon and Pinal County, December

15, 1994.

16.    Mr. Gordon entered into this temporary easement agreement with Pinal County to

provide the County with a temporary emergency easement until a nearby flood-damaged

bridge was repaired.

17.    Original owner Gordon agreed to the temporary easement with the clearly

expressed reservation codified within the Temporary Easement Agreement:

        "...Gordon does not want to convey fee title or a permanent easement
        across his property, but is willing to grant Pinal County a temporary

easement for highway purposes, including a river crossing across the San Pedro River, for public use."

18.    The nearby flood-damaged bridge is the Romero Road Bridge which was damaged in January 1993.

19.    The temporary emergency easement was to "be automatically extended for additional one-year periods, unless written notice is given by either party...of an intent not to renew the Agreement...Upon termination of this Agreement, Pinal shall erect barriers across the highway to close said highway to the public..."

20.    In 1996 George Gordon sold the property, subject to the temporary highway easement, to Eric Schwennesen and Jean Schwennesen.

21.    On March 4, 1996 a conservation easement agreement between the Nature Conservancy and Eric and Jean Schwennesen was filed with the Pinal County Recorder.

22.    The conservation easement was purchased for a sum of $140,000 and encumbered 215 acres of the Schwennesen Property.

23.    The Nature Conservancy transferred the conservation easement purchased from the Schwennesens to the Bureau of Land Management , United States Department of Interior, on April 21, 1997.

24.    Pinal County has never repaired the Romero Road Bridge.

25.    Off road vehicle ("ORV") use of the temporary easement for trespass access to the streambed and stream banks and resulting riparian damage have become increasingly serious problems in spite of signs posted by BLM stating "No Motor Vehicles," and "Administrative Use Only."

26.    Efforts by Arizona Game and Fish Department law enforcement officers, Pinal County sheriff's officers, BLM law enforcement officials, and the Schwennesens, were not able to control the ORV abuse.

27.    On June 13, 2007, the Schwennesens notified Pinal County of their desire to terminate the temporary easement pursuant to the contractual option within the Temporary Highway Easement Agreement.

28.     On December 31, 2007, pursuant to contractual provision within the Temporary Highway Easement Agreement, the temporary public easement was revoked, and easement reverted to use as a limited access, private ranch vehicleway, encumbered by the federal conservation easement with BLM.

29.     The Schwennesens assured access for themselves, administrative and emergency vehicles via an unlocked ranch gate across the road to control the destructive ORV traffic.

30.     On January 30, 2008,  Pinal County filed a Petition for Temporary Restraining Order, Application for Temporary Injunction, with Notice, and Request for Order Setting Hearing on Application in the Superior Court of Arizona, Division II, Pinal County, Florence, seeking to take that portion of the Schwennesen Property it intended to use as a public roadway, in case number CV200800276 in the Superior Court of the State of Arizona  for Pinal County.

31.     According to transcribed proceedings, the Temporary Restraining Order was granted in the chambers of the Judge Boyd T. Johnson, Judge of the Superior Court, with Christopher W. Kramer, attorney-at-law, on behalf of Pinal County, Arizona, present.

32.     Judge Johnson granted Pinal County authority to remove any existing impediments to unrestricted transit of vehicles across the Schwennesen property and to maintain the crossing in a wide open position.

33     Since January 31, 2007, Pinal County has utilized bulldozers, dredged and brought in fill,  to create an unrestricted public roadway on the Schwennesen property.

34.     On February 6, 2008 at the Board of Supervisors meeting, Supervisor Ruiz, in his official capacity, made a motion that was seconded by Supervisor Smith, in her official capacity, ratifying the "emergency litigation" in state court concerning the crossing of the San Pedro River and authorizing condemnation proceedings. The motion was carried by unanimous vote.

35.    On February 6, 2008, Pinal County filed a complaint in condemnation and application for immediate possession.

36.    This February 6, 2008 case was assigned case number CV2008004741 in the Superior Court for Arizona in Pinal County.

37.    Named as defendants are Eric Schwennesen, Jean Schwennesen (husband and wife), The Nature Conservancy, and the United States Department of Interior, Bureau of Land Management.

38.    On February 14, 2008, Pinal County petitioned and was granted by the Arizona Superior Court an "Order for Immediate Possession" of the property owned by the Schwennesens "for a necessary public use."

39.    Since January 31, 2008, Pinal County has maintained an unrestricted public roadway, in violation of the BLM conservation easement intending to limit crossing of the San Pedro River through the Schwennesen's property to administrative and emergency vehicles only.

40.    Since January 31, 2008, Pinal County has ignored the unlocked emergency/administrative ranch gate provided by the Schwennesens and has used heavy equipment and brought fill into in the bed of the San Pedro River within the Schwennesen Property.

41.    Since January 31, 2008, in violation of the BLM Conservation Easement, Pinal County's actions are causing accelerating erosion of streamside soils and damage to vegetation within Critical Habitat threatening consistently occupied Southwestern Willow Flycatcher nest trees.

42.    Since January 31, 2008, Pinal County's actions are facilitating and promoting unlimited, damaging recreational Off-Road Vehicle access to the San Pedro River, causing increasing and continuing damage to the environmental quality of the Schwennesen Property, in violation of the property rights of United States.

## LEGAL FRAMEWORK

(The United States Constitution and The Clean Water Act)

43.     Pursuant to the Supremacy Clause of the U.S. Constitution, federal statutes and regulations, as well as the policies and objectives encompassed therein, preempt conflicting state and local laws, policies, and objectives. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

44.     The U.S. Congress has plenary power over federal public lands under the Property Clause of the U.S. Constitution. "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular state." U.S. Const. art. IV, § 3, cl. 2.

45.     Accordingly, when Congress chooses to exercise its jurisdiction over federal public lands or property under the Property Clause, federal statutes and regulations, orders and decisions issued pursuant to those statutes and regulations, and the policies and objectives encompassed within those statutes and regulations preempt and override any conflicting state or local laws, regulations, policies, or objectives.

46.   The Federal Water Pollution Control Act, commonly known as the Clean Water Act (CWA), 33 U.S.C. section 1251 et seq., was first enacted in 1972.   The goal of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the nation's waters." To reach that goal, Congress established a general prohibition against discharges of pollutants into waters of the United States except in compliance with various sections of the CWA. Section 404 of the CWA regulates discharges of dredged and fill material into waters of the United States. Unless specifically exempt under the Act, all discharges of dredged or fill material into jurisdictional waters must be

authorized by some form of a section 404 permit. Waters of the United States are defined under the CWA regulations to include traditionally navigable waters and their tributaries, including ephemeral washes. The San Pedro River, and in particular, the year-round flowing section of the lower San Pedro River at issue here is a water of the United States for purposes of CWA permitting and enforcement.

## FIRST CLAIM FOR RELIEF

(Violation of the Supremacy Clause of the U.S. Constitution)

47.   The allegations in paragraphs 1-46 are incorporated herein by reference.

48.   Under the Supremacy Clause of the U.S. Constitution, federal statutes and regulations, orders and plans issued pursuant to federal legislation, and the policies and objectives contained within federal legislation preempt conflicting state and local laws, policies, and objectives. U.S. Const. art. VI, cl. 2.

49.   Pursuant to the Property Clause of the U.S. Constitution, Congress mandated that BLM manage the use of its lands pursuant to the Federal Land Policy and Management Act ("FLPMA.") and its implementing regulations. 43 U.S.C. § 1701 et seq.; 43 C.F.R. § Part 1600. FLPMA defines "public lands" as "any land and interest in land owned by the United States within the several states and administered by the Secretary of the Interior through the Bureau of Land Management, without regard to how the United States acquired ownership..." 43 U.S.C. § 1702(e).

50.   Pursuant to FLPMA and its implementing regulations, the BLM obtained a conservation easement on the Schwennesen Property, and restricted access to the existing vehicleway on the Schwennesen Property to administrative and/or emergency vehicles only.

51.   Congress intended to preempt conflicting state and local management of the use of BLM lands. Pinal County's construction of an unrestricted public road on land subject to contractual federal conservation easement conflicts with federal statutes and

1   regulations and decisions and/or orders issued pursuant to those statutes and regulations

2   and impedes the fulfillment of the objectives and policies encompassed within the federal

3   legislation.

4   52.     Pinal County's creation of an unrestricted public thoroughfare road on land

5   burdened by a BLM conservation easement, and therefore subject to the management

6   mandates of FLPMA, is preempted by federal law and violates the Supremacy Clause of

7   the U.S. Constitution, art. VI, cl. 2.

8                           **SECOND CLAIM FOR RELIEF**

9                           (Violation of the Clean Water Act)

10

11  53.     The allegations in paragraphs 1-52 are incorporated herein by reference.

12  54.     Pinal County's dredging within the streambed and placement of fill into the San

13  Pedro River, a water of the United States, without a permit, violates section 404 of the

14  Clean Water Act,  33 U.S.C. 1344.

15                              **PRAYER FOR RELIEF**

16
    A.      Declare unconstitutional the Pinal County Board of Supervisors' decision to
17
    initiate condemnation proceedings of a portion of the Schwennesen Property encumbered
18
    by a federal conservation easement, as a violation of the property rights of the United
19
    States and the Supremacy Clause;
20

21  B.      Declare unconstitutional any actions taken by Pinal County to build a road open to

22  unrestricted vehicle use crossing the San Pedro River on the Schwennesen Property

23  subject to the BLM conservation easement.  Any crossing of the encumbered property

24  should be limited to administrative and emergency use only, pursuant to federal law,

25  regulation, management plan or other decision issued pursuant to federal law;

26  C.      Enjoin Pinal County from adopting resolutions, posting signs, condemning, or

27  otherwise indicating as open to unrestricted public vehicle use any portion of the

28

1   Schwennesen Property subject to federal law, regulation, management plan, or otherwise

2   used pursuant to federal law;

3   D.      Enjoin Pinal County from creating or maintaining roadways near or through the

4   San Pedro River, or dredging within the streambed and placing any fill in the San Pedro

5   River, within the Schwennesen Property encumbered by the BLM easement, as a

6   violation of the Clean Water Act;

7   E.      Grant Plaintiffs such other injunctive and declaratory relief as this Court deems

8   just and proper; and

9

10  F.      Award Plaintiffs reasonable attorney fees, costs and expenses incurred in pursuing

11  this action as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412, the Clean

12  Water Act, 33 U.S.C. § 1365, and any other applicable law.

13

14      **RESPECTFULLY SUBMITTED** this  4th  day of June, 2008.

15

16

17

18      Clifford Levenson
        Attorney for Plaintiffs
19

20

21

22

23

24

25

26

27

28